# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **LAND CONSERVANCY OF ELKINS PARK, INC.,** | : | |
| | : | |
| Debtor. | : | Bky. No. 10-19522 ELF |
| | : | |
| ——————————————— | : | |
| | : | |
| **LAND CONSERVANCY OF ELKINS PARK, INC.,** | : | |
| | : | |
| Plaintiff, | : | Adv. No. 10-0449 |
| | : | |
| v. | : | |
| | : | |
| **DOMINICAN CONGREGATION OF ST. CATHERINE DE'RICCI,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

# O R D E R

**AND NOW**, WHEREAS:

A. On **December 9, 2011**, Plaintiff Land Conservancy of Elkins Park, Inc. ("the Debtor") filed a motion to approve ("the Motion to Approve") a revised settlement agreement ("the Revised Settlement Agreement") between the Debtor and the Defendant Dominican Congregation of St. Catherine De'Ricci ("the Congregation") in the above adversary proceeding. (Adv. No. 10-0449, Doc. # 79).

B. By order dated **December 22, 2011**, the court granted the Motion to Approve. (Id., Doc. # 84).

C. The Revised Settlement Agreement resolved a dispute between the parties relating to a debt owed to the Congregation by the Debtor and the parties' competing claims to ownership of

the real property located at 1750 Ashbourne Road, Elkins Park, PA ("the Property").

D. The Revised Settlement Agreement provides, <u>inter alia</u>, for:

    (1) a release of all claims held by the Debtor against the Congregation;

    (2) the allowance of the Congregation's allowed secured claim in an agreed amount;

    (3) the satisfaction of the Congregation's claim, with interest at an agreed rate, through a payment schedule requiring payments by the Debtor of $300,000.00 on or before **December 31, 2011**, **April 30, 2012 and September 15, 2012**, with a balloon payment for the balance of the claim to be paid on or before **December 31, 2012**;

    (4) time being of the essence and no right to cure or grace period in the event of a payment default by the Debtor;

    (5) upon completion of the Debtor's payment obligations, the Congregation's consent to the entry of an order setting aside its deed to the Property (thereby restoring title to the Property to the Debtor);

    (6) specified remedies in the event of a default by the Debtor, including (i) termination of the Congregation's obligation to consent to the entry of an order setting aside its deed to the Property; and (ii) surrender of the Property by the Debtor to the Congregation.

E. The Debtor entered into the Revised Settlement Agreement with the expectation that its initial payment to the Congregation of $300,000.00 due on **December 31, 2011** would be funded from the refund of a deposit the Debtor had previously paid to a prospective lender Atlantic Rim Funding ("Atlantic Rim").

F. Atlantic Rim failed to return the deposit to the Debtor, as a result of which the Debtor defaulted on its **December 31, 2011** payment obligation under the Revised Settlement Agreement.

G. On **January 18, 2012**, the Congregation filed a motion for relief from the automatic stay ("the 362 Motion"), seeking authority to exercise all of it remedies relating to the Property including actions necessary to eject the Debtor from possession. (Bky. No. 10-19522, Doc. # 266). The Debtor responded to the 362 Motion on **February 6, 2012**. (Bky. No. 10-19522,

Doc. # 282).

H. In addition, on **January 18, 2012**, the Debtor filed a motion to vacate the **December 22, 2011** Order approving the Revised Settlement Agreement ("the Motion to Vacate"). The Congregation responded to the Motion to Vacate on **February 9, 2012**. (Adv. No. 10-0449, Doc. #'s 86, 91).

I. The Debtor contests the 362 Motion on three (3) grounds:

   (1) The Revised Settlement Agreement is unenforceable because neither party executed it.

   (2) The Revised Settlement Agreement is unenforceable under the doctrine of impracticability.

   (3) Even if the Revised Settlement Agreement is enforceable, the court should exercise its equitable discretion to deny immediate relief from the automatic stay under 11 U.S.C. §362(d).

J. The court held an evidentiary hearing on **February 15, 2012**.

K. The court has concluded that:

   (1) the Revised Settlement Agreement is enforceable notwithstanding the parties' failure to execute the written agreement;[1]

   (2) the doctrine of impracticability does not bar enforcement of the Revised Settlement

---

[1] It is indisputable, based on the testimony and documentary evidence, that the parties reached an agreement and that its terms were memorialized in the Revised Settlement Agreement that was filed with the court and approved by the court at the joint request of the parties. See generally In re NuNet, Inc., 348 B.R. 300, 310 (Bankr. E.D. Pa. 2006) ("As a general rule, signatures to a contract are not required unless such signing is expressly required by law or by the intent of the parties"). Further, nothing in the record suggests that either party conditioned the enforceability or finality of the agreement upon execution of the written document that was submitted to the court for approval. In these circumstances, the lack of execution of the Revised Settlement Agreement is no bar to its enforceability. In re Janssen, 2009 WL 5216859, at *4 (Bankr. E.D. Pa. Dec. 29, 2009) (settlement enforced where one party did not expressly reserve right to withdraw from settlement prior to execution of written settlement agreement).

Agreement;[2] and

---

[2]    Pennsylvania state and federal courts have adopted the doctrine of impracticability (also referred to as "impossibility") as set forth in the Restatement (Second) of Contracts §261 (1981) ("Restatement").  See e.g., Prusky v. Reliastar Life Ins. Co., 445 F.3d 695, 700-01 (3d Cir. 2006); Step Plan Services, Inc. v. Koresko, 12 A.3d 401, 411-14 (Pa. Super. Ct. 2010).  Although the general rule is that a "a party generally assumes the risk of his own inability to perform his duty" under a contract, Restatement §261 cmt. e; accord Dorn v. Stanhope Steel, Inc., 534 A.2d 798, 813 (Pa. Super. Ct. 1987), under the Restatement §261, the obligation to perform on a contract may be excused "where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made . . .  unless the language or the circumstances indicate the contrary."

> The principal inquiry in an impracticability analysis . . .  is whether there was a contingency the non-occurrence of which was a basic assumption underlying the contract. . . .  [T]his question turns on whether the contingency was "foreseeable,"on the rationale that if it was, the promisor could have sought to negotiate explicit contractual protection.

Specialty Tires of America, Inc. v. CIT Group/Equipment Financing, Inc., 82 F. Supp. 2d 434, 438 (W.D. Pa. 2000) (citations omitted).

Analysis of the issue is facilitated by focusing on whether the unexpected event that prevented performance of the contractual obligation was "unforeseeable," rather than "foreseeable."  An event is "unforeseeable" if it is "so unlikely to occur that reasonable parties see no need explicitly to allocate the risk of its occurrence, although the impact it might have would be of such magnitude that the parties would have negotiated over it, had the event been more likely."  Id. at 439 n. 10 (quoting John D. Calamari & Joseph M. Perillo, The Law of Contracts § 13.18, at 526 (4th ed.1998)).  In particular, if a party's ability to perform depends on some act by a third party, the obligation to perform is not ordinarily discharged because of the failure of the third party to deliver on other promises, especially whether the third party's promise is merely to pay money.  Specialty Tires, 82 F. Supp. 2d at 439.

In this case, given the history of the Debtor's relationship with Atlantic Rim, which consisted of a series of Atlantic Rim's broken promises to fund a loan, it was certainly foreseeable that Atlantic Rim might not timely perform its obligation to return the Debtor's $600,000.00 deposit.  To the extent that the Debtor needed the deposit returned in order to perform its obligations, and especially in light of the relatively short period of time between the submission of the parties' agreement to the court (December 9, 2011) and the deadline for the Debtor's first payment (December 31, 2011), I conclude that there was a known risk of default that necessarily had to be within the contemplation of the parties. Perhaps more to the point, the risk of Atlantic Rim's nonperformance of its obligation to the Debtor was not so remote that it would be reasonable to conclude that the parties saw no need to address it. Consequently, because the Revised Settlement Agreement did not address this foreseeable risk, the doctrine of impracticability is inapplicable.  Instead, the general rule applies: the Debtor assumed the risk of its own inability to perform.

      (3) cause exists under 11 U.S.C. §362(d) to grant the Congregation relief from the automatic stay.[3]

---

[3]     Due to the Debtor's breach of the Revised Settlement Agreement: (1) the Congregation's obligation to restore title to the Property to the Debtor after full payment of its allowed claim has terminated; and (2) the Congregation has a right to immediate possession of the Property. Based on these consequences, no extended discussion is needed to explain why the Debtor's breach of the Revised Settlement Agreement makes out a prima facie case for "cause" for relief from the automatic stay under 11 U.S.C. §362(d)(1). The Debtor defends by requesting that the court find that cause does not exist because it hopes to cure its monetary default, perhaps within a matter of days, and if not that quickly, by March 30, 2012. For this reason, the Debtor requests that the court defer granting the Congregation stay relief on equitable grounds. I am not persuaded by this argument.

    After so many "stops and starts" and unfulfilled promises by Atlantic Rim's representatives since the inception of its relationship with the Debtor in 2011, it is not so sufficiently probable that the return of the Debtor's deposit (or even a significant portion of it) is imminent as to justify imposing further delays on the Congregation. Moreover, the Debtor's failure to perform was not a breach of a discrete, "stand-alone" stay relief settlement stipulation as are commonly submitted to this court, in which creditors grant forbearance in return for more expeditious procedures for obtaining relief in the event of a future default. The Revised Settlement Agreement was a comprehensive, global settlement reached by the parties, negotiated through experienced counsel. The final agreement undoubtedly represented a compromise of a number of issues that the parties were prepared to litigate. It also represented the second time the parties reached agreement, their first agreement also having been breached by the Debtor's failure to comply with its payment obligation. In these circumstances, it is absolutely clear from the history of this case, as well as the plain language of the Revised Settlement Agreement, that the agreement's requirement that the Debtor comply strictly with the performance deadlines set forth was perhaps the most material term bargained for by the Congregation. The particular context in which the parties reached agreement makes it compelling that the agreement be enforced according to its plain terms.

    I am mindful that, from the Debtor's perspective, the grant of stay relief, likely amounts to a forfeiture caused by circumstances it could not entirely control and that it will damage and may destroy the Debtor's mission of preserving a landmark property. I also am cognizant that granting relief likely will prejudice the Debtor's "innocent" creditors, particularly the customers who contracted with the Debtor post-petition to schedule weddings and other events at the Property. However, in light of the clear and unmistakable terms and purpose of the court-approved Revised Settlement Agreement, denying relief would be inequitable to the Congregation and would constitute an abuse of the court's discretion.

    There may situations in which it is appropriate for a bankruptcy court to invoke its equitable powers and not strictly enforce a court-approved settlement stipulation. At bottom, however, the Debtor's equitable defense is little more than an alternate label for its impracticability defense and must be rejected for the similar reasons. Denial, or even deferral, of stay relief would not be an appropriate exercise of discretion in the circumstances presented here.

It is therefore, **ORDERED** that:

1. The Debtor's Motion to Vacate the December 22, 2011 Order Approving the Revised Settlement Agreement (Adv. No. 10-0449, Doc. # 86) is **DENIED**.

2. The Congregation's Motion for Relief from the Automatic Stay (Bky. No. 10-19522, Doc. # 266) is **GRANTED**.

3. Subject to Fed. R. Bankr. P. 4001(a)(3), the automatic stay is **MODIFIED** to permit the Congregation to exercise all of its in rem rights and remedies under applicable nonbankruptcy law with respect to the property located at 1750 Ashbourne Road, Elkins Park, PA.

4. The Clerk shall enter this order on the docket in both the main bankruptcy case and the adversary proceeding.

**Date:  February 21, 2012**

**ERIC L. FRANK
U.S. BANKRUPTCY JUDGE**